IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| LARRY BUTLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 316-013 |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security ) | |
| Administration,[1] ) | |
| ) | |
| Defendant. ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Larry Butler appeals the decision of the Acting Commissioner of Social Security denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

**I.    BACKGROUND**

Plaintiff protectively applied for DIB and SSI on January 11, 2010, alleging a disability onset date of November 1, 2007. Tr. ("R."), pp. 19, 272-82. The alleged onset date fell less than

---

[1]The Court takes judicial notice that on January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), the Court **DIRECTS** the Clerk of Court to substitute Nancy A. Berryhill as Defendant in this case.

one month after the denial of a prior disability application and on the day his last job "ran out." R. 331-32, 337.  Plaintiff was fifty-two years old on his alleged disability onset date and was fifty-eight years old at the time the Administrative Law Judge ("ALJ") issued the decision under consideration.  R. 31, 284.  Plaintiff claimed he was disabled based on allegations of back, hearing, and breathing problems.  R. 336.  Plaintiff completed eighth grade, and prior to his alleged disability, Plaintiff had accrued a relevant work history that included more than fifteen years performing a variety of manual labor, including feeding livestock, landscaping, cutting meat, and running a chain saw.  R. 338.

The Social Security Administration denied Plaintiff's applications initially and on reconsideration.  R. 122-25, 168-73.  Plaintiff requested a hearing before an ALJ, R. 174-78, and the ALJ held a hearing on November 17, 2011.  R. 82-121.  At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Ronald Spitznagel, a Vocational Expert ("VE").  Id.  On March 7, 2012, the ALJ issued an unfavorable decision, in which he found Plaintiff could perform his past relevant work as a carcass splitter, construction worker, and landscape specialist.  R. 126-41.

Plaintiff then requested that the Appeals Council ("AC") review the ALJ's decision.  R. 224-33.  The AC vacated the March 7, 2012 decision and remanded because "[t]he decision does not contain a complete evaluation of the claimant's mental impairments."  R. 143.  The remand order specifically referenced Listings 12.05 and 12.08, and concluded, "[T]he record regarding the claimant's possible intellectual disability is incomplete and there is insufficient support for the conclusion that the claimant's conditions do not meet or equal the criteria for Listing 12.05."  R. 143, 144.

2

On remand, the ALJ held a second hearing. At the hearing held March 27, 2014, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from VE Tina Baker-Ivy. R. 38-81. In a second opinion, dated June 11, 2014, the ALJ determined Plaintiff was not disabled. R. 14-35.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since November 1, 2007, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq*. and 416.971 *et seq*.), and he meets the insured status requirements of the Social Security Act through June 30, 2008.

2. The claimant has the following severe impairments: formal learning disorder; adult antisocial behavior disorder; depression; and mild hearing loss (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: He has no physical or postural limitations but [his] moderate hearing loss precludes him from working at jobs where verbal directions are given in moderate to noisy environments. Verbal commands should be given to him face-to-face in a louder than normal voice.

   The claimant's difficulties with reading, writing, and performing simple mathematical computations due to his formal book learning disorder; his depression; and his adult antisocial behavior limits him to performing work activities that do not require him to read, write, or perform mathematical computations in order to complete his work activities successfully. His social interaction with the public, supervisors, and coworkers should be limited to no more than one third of an eight-hour workday although he can work in close proximity with them throughout the entire workday. He is better off working with objects and things rather than people. He is limited to performing work activities with a specific vocational preparation ("SVP") 1-3. While his concentration may be intermittently disrupted for up to 1/3 of an eight-hour workday if the work is in the upper limits of semi-skilled or even skilled

3

      work; he can pay enough attention to details to meet the general productivity requirements of the job(s) within the same workday if the work he is performing is simple repetitive, routine, or boring. The claimant is capable of performing past relevant work as a landscaper, as he performed it at SVP 2.[2] This work does not require the performance of work-related activities precluded by the claimant's RFC (20 C.F.R. §§ 404.1565 and 416.965).

R. 21-30.

      Because the ALJ determined Plaintiff could perform his past relevant work, the sequential evaluation process stopped, and the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from November 1, 2007, through the date of the decision, June 11, 2014. R. 30-31.

      When the AC denied Plaintiff's request for review of the second ALJ decision, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because, contrary to the ALJ's finding, he meets Listing 12.05C. See doc. no. 10 ("Pl.'s Br."); doc. no. 12 ("Pl.'s Reply"). The Commissioner maintains the administrative decision is supported by substantial evidence and should therefore be affirmed. See doc. no. 11 ("Comm'r's Br.").

      Although Plaintiff originally requested reversal and remand pursuant to sentence four of 42 U.S.C. § 405(g), along with filing his reply brief, Plaintiff belatedly requested remand pursuant to sentence six of 42 U.S.C. § 405(g) based on a June 1, 2016 hearing evaluation conducted by Jennifer Davis, AU.D. (See doc. no. 13.) After this hearing evaluation, the

---

[2] Using the skill level definitions in 20 C.F.R. §§ 404.1568(a) and 416.968(a), the Dictionary of Occupational Titles lists a specific vocational preparation (SVP) time for unskilled work of 1-2. See SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).

Social Security Administration found Plaintiff disabled as of March 1, 2016. (Doc. no. 13-1.) There is no explanation why this information was not included in Plaintiff's original brief, which was due and filed over two months after the June 1st hearing evaluation.[3] In the sentence six request, Plaintiff concedes the report he submitted by Miracle Ear Hearing Aid Center in support of his 2010 applications, (R. 629-31), "is not entitled to any weight because the person performing the evaluation . . . is not considered by the Social Security Administration as qualified to render an opinion on the extent of" Plaintiff's hearing loss. (Doc. no. 13, p. 2.) He requests the Court remand the case for consideration of the 2016 report with respect to the ALJ's 2014 disability finding. (Doc. nos. 13, 15.) The Commissioner opposes the sentence six request, arguing the evidence is not material to the ALJ's decision. (Doc. no. 14.)

## II.     STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence,

---

[3] The Court observes a pattern in the filing practices of Plaintiff's counsel in that he does not follow the Court's instructions to file an opening brief "setting forth all errors which Plaintiff contends entitles him to relief." (Doc. no. 9, p. 1.) Instead, counsel files a brief and then files multiple replies raising new issues once the Commissioner files her response brief. Cf. Evans v. Berryhill, CV 315-096, doc. nos. 24, 27, 29, 31 (S.D. Ga.). As the Court explained in Evans, issues not properly raised in an opening brief may be waived. Id., doc. no. 32, pp. 12-13 (collecting cases), *adopted by*, doc. no. 36 (Bowen, J.). Although Plaintiff titled his third supporting document in this case as a motion to remand, the filing could be fairly construed as the third of four briefs requesting the administrative decision be returned to the Commissioner, and the request is for a reason never raised in the opening brief.

5

or substitute its judgment for the Commissioner's.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Substantial evidence is "more than a scintilla, but less than a preponderance:  '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239).  If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004).  Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence.  McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

Plaintiff claims the ALJ erred in determining he does not meet the requirements of Listing 12.05C. As summarized by Plaintiff, "[T]wo psychological evaluations performed at the request of the Social Security Administration combined with unskilled work, deficient education, depression, and the severe to profound hearing loss supports a finding that [Plaintiff] meets Listing 12.05C." Pl.'s Br., pp. 12-13. In support of his argument, Plaintiff claims the ALJ erred primarily in his analysis of the opinion and full scale IQ score provided by consultative examiner Marvin Long, Ed.d. Plaintiff also relies on diagnoses or mere mention of impairments in an apparent attempt to show he meets the additional requirement of Listing 12.05C that he have a physical or mental impairment imposing an additional and significant work-related limitation of function. Id. at 2-4. However, for two reasons the Court confines its analysis to the initial mental impairment requirement of Listing 12.05C

First, as discussed below, the ALJ's decision about the level of mental impairment is supported by substantial evidence. Without the requisite valid IQ score, the issue of an additional impairment is moot. Second, Plaintiff's implicit argument about a physical or mental impairment imposing an additional work-related limitation of function is based on citations to various diagnoses without reference to, or explanation as to how, the ALJ's assessment of the entire record was legally insufficient.[4] However, the mere existence of a diagnosis is insufficient to show an impact on Plaintiff's ability to work. See Moore, 405 F.3d at 1213 n.6 ("[T]he mere existence of these impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard.")

---

[4]To the extent Plaintiff argues about the level of his hearing loss, the Court addresses that contention in detail in Part III(B)&(C), *infra*.

Plaintiff seemingly wants the Court to revisit the issue of disability *de novo*. The law does not allow the Court to do this. As explained in section II, *supra*, determination as to whether there is substantial evidence in the record to support fact findings in a social security disability case does not involve reweighing evidence, trying issues *de novo*, or substituting the Court's judgment for that of the Commissioner. Thus, the Court turns to the ALJ's evaluation of Plaintiff's mental impairment.

**A.     The Requirements for Satisfying Listing 12.05C at Step Three of the Evaluation Process**

At step three of the evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that his condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014); Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).

In order to show that his impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

8

"Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.  To qualify as intellectually disabled, a claimant's condition must satisfy this general diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing.  Id. §12.00A; see also Perkins v. Comm'r, Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).  Thus, "a claimant must demonstrate both subaverage intellectual functioning and deficits in adaptive functioning, as well as satisfying one of the additional criteria, to prove entitlement to disability benefits under Listing 12.05." Jordan v. Comm'r of Soc. Sec. Admin., 470 F. App'x 766, 768 (11th Cir. 2012).  The regulations give several examples of adaptive activities, including: "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00C(1).

Listing 12.05C states: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. § 12.05C.  Thus, a claimant generally meets the Listing 12.05C criteria when he, in addition to satisfying the diagnostic definition, "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); see also Perkins, 553 F. App'x at 873 (requiring a showing for Listing 12.05C

9

claim that individual meets the Listing 12.05 diagnostic criteria, including deficits in adaptive function, along with onset before age twenty-two, a qualifying IQ score, and the requisite deficits in work related functioning). However, "a valid I.Q. score need not be conclusive of [intellectual disability] where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery, 979 F.2d at 837; see also Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) ("[IQ] test results must be examined to assure consistency with daily activities and behavior").

### B. The ALJ's Finding Plaintiff Did Not Meet Listing 12.05C Is Supported by Substantial Evidence.

#### 1. Plaintiff's Standardized Scores

Plaintiff bases his argument for remand primarily on the assertion the ALJ misinterpreted the findings of Dr. Long obtained during his consultative examination performed on April 28, 2010. R. 531-36. In particular, Plaintiff contends the ALJ improperly rejected Dr. Long's assignment of a full-scale IQ score of 61, as well as the score of 64 from John C. Whitley, III, Ph.D.[5] Plaintiff also faults the ALJ for not explicitly assigning weight to Dr. Long's opinion. Neither argument shows Plaintiff meets Listing 12.05C.

Although a low IQ score raises a presumption of intellectual disability, that presumption may be rebutted with evidence of daily activities that are inconsistent with a diagnosis of

---

[5]Plaintiff's concern that the ALJ confused the full-scale IQ score of 61 from Dr. Long with the 64 test score assigned by consultative examiner John C. Whitley, III, Ph.D., need not delay the Court. This typographical error forms no basis for remand because both scores fall within the 60 to 70 range required by Listing 12.05C, and as discussed above an IQ score in the requisite range is not determinative of whether Plaintiff meets the Listing. See Majkut v. Comm'r of Soc. Sec., 394 F. App'x 660, 665 (11th Cir. 2010) ("[E]rroneous factual statements by the ALJ may constitute harmless error if the ALJ applies the proper legal standard." Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983)).

intellectual disability.  See Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001).  Furthermore, the results of standardized tests are only part of the overall assessment, which includes an analysis of daily activities and behavior for a determination on whether there are deficits in adaptive functioning.  See Frame v. Comm'r, Soc. Sec. Admin., 596 F. App'x 908, 910, 912-13 (11th Cir. 2015).  Even if the Court were to accept Plaintiff's argument the ALJ improperly discredited the standardized test scores, Plaintiff has not established he meets Listing 12.05C because his daily activities and behavior were inconsistent with the low scores.  See Lowery, 979 F.2d at 837.

First, the Court rejects Plaintiff's argument the AC's remand order "implied" the IQ score assigned by Dr. Long was valid.  The remand order states a portion of Dr. Long's report is missing from the record, "and the portion of Dr. Long's report that is in the record does not state the IQ test results were invalid." R. 143.  Not only is there no "implication" to be drawn of the AC's comments concerning Dr. Long's score, but the remand order made no mention of affirming or leaving undisturbed any portion of the prior decision.  To the contrary, the AC's remand order states that it "vacates the hearing decision" and directs the ALJ to "take any further action needed to complete the administrative record and issue a new decision." R. 143, 145.

Next, the Court turns to what the ALJ said about the standardized test scores.  The ALJ found Plaintiff did not have the requisite valid IQ scores because Dr. Long "indicated these scores were invalid based upon [Plaintiff's] adaptability functions that are at a much higher level." R. 23.  The ALJ also stated that despite Dr. Long noting Plaintiff's formal education was "bad . . . his cognitive functioning was much higher than the IQ scores allowed." R. 23.  Indeed, Dr. Long recounted Plaintiff had dropped out of school in the 8th grade, but had been married and fathered two children. R. 582.  Dr. Long also recounted Plaintiff had not obtained any new

11

charges since his release from a two-year prison stint, and Plaintiff had been a "jack of all trades working in the woods, landscaping, [and driving] tractors." R. 532. Although Dr. Long never used the word "invalid," he did opine there was "no evidence of true retardation," and cautioned to "be careful" in considering test results because "[w]e didn't get the straight story from him." R. 22, 535.

The ALJ also evaluated Dr. Long's IQ score by comparing it to the results of the consultative examination conducted by John C. Whitley, III, Ph.D., on January 16, 2014. R. 22, 632-41. Similar to Dr. Long, Dr. Whitley reported Plaintiff had struggled academically and dropped out of school. R. 637. However, Plaintiff had worked for several years as a landscaper until "there was no more work." R. 637. Dr. Whitley assigned a full scale score of 64 on the Comprehensive Test of Nonverbal Intelligence, Second Edition, and opined the test results were "a valid estimation of [Plaintiff's] abilities and functioning and appear to be congruent with a previous psychological evaluation." R. 639. However, Dr. Whitley also opined Plaintiff could perform "unskilled, simple and routine types of task[s] that he has performed in the past." R. 28. 640.

Plaintiff argues the ALJ should have re-contacted Dr. Whitley because he did not give an Axis II diagnosis, where he presumably implies mental retardation would have been diagnosed. However, an ALJ is not required to seek additional information where, as here, there was sufficient information in the record for the ALJ to make an informed decision. See Ingram v. Comm'r Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007) (recognizing ALJ not required to seek additional medical information so long as record contains sufficient information to make an informed decision on a claimant's application). The ALJ pointed out Dr. Whitley never diagnosed Plaintiff with mild or mental retardation or borderline intellectual

12

functioning. See Smith v. Comm'r of Soc. Sec., 535 F. App'x 894, 897-98 (11th Cir. 2013) ("The fact that none of the other treatment records diagnosed . . . mental retardation supports the ALJ's rejection of the IQ test results and supports the conclusion that [the plaintiff] did not meet or equal the criteria of Listing 12.05(C).")  Moreover, Plaintiff's treating psychiatrist, Manuel Lucero, M.D., opined Plaintiff has "average intelligence," and did not exhibit any cognitive impairment. R. 23, 645.

Both consultative examiners may have produced similar standardized test scores, but as pointed out by the ALJ, the record is also replete with information, including within the reports of Drs. Long and Whitley, describing adaptive functioning inconsistent with those scores and disabling intellectual disability.  As succinctly summarized by the Commissioner, the ALJ identified multiple reasons why the scores from Drs. Long and Whitley were undermined by Plaintiff's level of adaptive functioning:

> The ALJ found that Plaintiff's adaptive functioning included working for several years, independent self-care, managing his own finances with some assistance, some occasional household chores, listening to music and watching soap operas and movies on television, cooking simple meals using a microwave, going fishing; shopping for food, clothing, and hygiene products, the ability to drive although his driver's license had been suspended, interacting with family members, adequate co-workers relations when employed, understanding, remembering, and carrying out simple instructions, and making judgments on simple work-related decisions  (Tr. 23-24, 531-536, 636-641). Even assuming that Plaintiff had valid IQ testing to satisfy the Paragraph C criteria, the ALJ properly found that he did not have the requisite deficits in adaptive functioning (Tr. 23-24).

Comm'r's Br., p. 13.

As current deficits in adaptive functioning are an additional requirement alongside a valid IQ score in the necessary range, Plaintiff's arguments fail to rebut the ALJ's finding that he does not satisfy the requirements of Listing 12.05C.  See Perkins, 553 F. App'x at

13

873 (affirming ALJ's conclusion that plaintiff did not meet Listing 12.05C despite IQ in required range due to plaintiff's work experience and daily living activities); Harris v. Comm'r of Soc. Sec., 330 F. App'x 813, 815 (11th Cir. 2009) (finding substantial evidence to support conclusion claimant did not meet Listing 12.05C, despite participation in special education classes, where he "was never diagnosed with mental retardation, only borderline intellectual functioning" and ability for self-care, managing money, and communicating effectively with others ruled out deficits in adaptive functioning necessary to meet Listing); Davis v. Astrue, Civ. Act. No. 2:07cv880, 2008 WL 2939523, at *3 (M.D. Ala. July 25, 2008) (noting no document in record classified claimant as intellectually disabled and relying on medical opinion that adaptive behavior may elevate claimant with IQ scores in mild range of intellectual disability to borderline intellectual functioning that does not satisfy Listing 12.05C).

### 2. Assigning Weight to Dr. Long's Opinion

As a second attempt to force acceptance of the validity of Dr. Long's IQ score, Plaintiff faults the ALJ for not explicitly assigning weight to Dr. Long's opinion and argues the failure to specify the weight given to a treating physician's opinion requires that the opinion be given great weight.[6]  Pl.'s Br., p. 10.  Notably, Dr. Long was not a treating physician, but the argument fails even after assigning the correct status to Dr. Long as a consultative examiner.

As a general rule, the opinion of a one-time examiner is not entitled to great weight. Stone v. Comm'r of Soc. Sec., 544 F. App'x 839, 842 (11th Cir. 2013); Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160-61 (11th Cir. 2004).  The law is clear, "The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was

---

[6]Plaintiff's secondary argument that Dr. Whitley's standardized score must be given great weight because the reasons stated by the ALJ were insufficient is but a rehashing of the argument discussed and rejected above.  Pl.'s Br., pp. 11-12.

not a treating physician." Stone, 544 F. App'x at 842 (citing McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987)).  However, as part of the duty to develop a full and fair record, the ALJ must "make clear the weight accorded to the various testimony considered." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).  In the absence of a statement from the ALJ concerning the weight given to different medical opinions and the reasons for assigning such weight, the reviewing court will be unable to determine whether the decision is supported by substantial evidence. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).

As discussed in detail above, the ALJ extensively discussed Dr. Long's findings.  He first reviewed Dr. Long's examination at step two of the sequential process when discussing Plaintiff's severe impairments. R. 22.  The ALJ again discussed Dr. Long at step three of the sequential process, explaining why the IQ score assigned was invalid, including Plaintiff's adaptive and cognitive functioning. R. 23.  The ALJ went on to rely on information in Dr. Long's report to support his analysis of the "paragraph B" criteria and included many of Dr. Long's findings in his discussion:  no restriction of activities of daily living, moderate difficulties with social functioning and concentration, independent self-care, occasional household chores, watching television, simple cooking, fishing, simple shopping trips, and formerly held driver's license. R. 24, 532-35.  The ALJ again discussed Dr. Long when formulating Plaintiff's RFC, noting Dr. Long's findings are consistent with the performance of simple, unskilled work. R. 28.

But for the IQ score, which as discussed above was properly discounted, the ALJ incorporated Dr. Long's well-supported findings in the RFC.  Because of hearing problems, verbal commands were required to be given face-to-face in a louder than normal voice, in someplace other than a moderate to noisy environment. R. 24.  The ALJ limited Plaintiff to

work activities that do not require him to read, write, or perform mathematical computations. R. 24-25. His social interaction was limited, and he was restricted to jobs with a SVP of 1-3.

In sum, much of Plaintiff's argument goes to how the ALJ weighed the evidence, a task beyond this Court's purview. Cornelius, 936 F.2d at 1145. Plaintiff does not validly point to any information in Dr. Long's findings that were inconsistent with the ALJ's RFC. Thus, contrary to Plaintiff's contention, the ALJ did impliedly assign weight to Dr. Long's opinion in the context of his discussion of the entirety of the relevant medical evidence and then including Dr. Long's well-supported findings as limitations in the RFC. See Hardman v. Colvin, No. 3:12-CV-42, 2013 WL 3820694, at *6 (M.D. Ga. July 23, 2013) ("It is clear that the ALJ gave weight to the opinion of [the consultative examiner] as it was made manifest by the ALJ's RFC finding."); see also Turner v. Comm'r of Soc. Sec., No. 6:12-cv-937, 2013 WL 5330430, at *4 (M.D. Fla. Sept. 23, 2013) ("Failure to state the weight given to a medical opinion is generally harmless where the opinion at issue does not contradict the ALJ's RFC determination." (citing Wright v. Barnhart, 153 F. App'x 678, 684 (11th Cir. 2005)).

### 3. School Records

Plaintiff also complains the ALJ did not mention Plaintiff's school records. Pl.'s Br., p. 12; R. 439. There is no requirement an ALJ reference every piece of evidence in the record. Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). There was no error in failing to mention every notation or reference to Plaintiff's mental capacity or schooling where, as here, the record reveals the ALJ (1) was well aware of the allegations of intellectual impairment, indeed acknowledged Plaintiff's special education classes and his dropping out of school before completing ninth grade, (R. 22), (2) extensively reviewed findings from multiple doctors regarding Plaintiff's intellectual capabilities, and (3) limited Plaintiff to unskilled work

16

requiring no reading, writing, or even simple mathematical computations. As discussed in detail above, the ALJ extensively reviewed the evidence related to Plaintiff's intellectual capacity for work, and his conclusion that Plaintiff could perform past relevant work at the unskilled SVP level, as he had done previously for years, is supported by substantial evidence.

In sum, substantial evidence supports the ALJ's finding, based on an extensive review of the record, that Plaintiff did not satisfy Listing 12.05C. Not only did Plaintiff not have a valid IQ score, but he did not have the requisite current deficits in adaptive functioning. Therefore, the Commissioner's decision should be affirmed.

### C. Plaintiff's "New Evidence" Submitted to this Court Does Not Entitle Him to a Remand.

Lastly, Plaintiff belatedly requests a sentence six remand based on an additional hearing test performed in 2016 by a Doctor of Audiology, which resulted in a disability finding on a subsequent application filed on March 1, 2016. (See doc. nos. 13, 13-1.) Plaintiff now contends that an updated test performed by an appropriate medical source is material to the ALJ's decision in 2014. In passing, Plaintiff also suggests the ALJ should have sent Plaintiff for a hearing test by a licensed audiologist before making a decision on the 2010 applications. (Doc. no. 13, p. 3.) The Court disagrees.

A reviewing court, when presented with new evidence that was never presented for review at the administrative level, may only consider whether the new evidence necessitates remand under sentence six of § 405(g); a reviewing court may not consider the new evidence in determining whether the Commissioner's final decision is supported by substantial evidence. Ingram, 496 F.3d at 1267-68; Norton v. Comm'r of Soc. Sec., 607 F. App'x 913, 917-18 (11th Cir. 2015); see also Wilson v. Apfel, 179 F.3d 1276, 1278-79 (11th Cir. 1999)

(evidence attached to appellant's brief not properly before the court) (citing Cherry v. Heckler, 760 F.2d 1186, 1193 (11th Cir. 1985) (noting general principle that court's review is limited to certified administrative record)); Walters v. Barnhart, 184 F. Supp.2d 1178, 1185 (M.D. Ala. 2001) ("The plaintiff submits to the Court medical records which she did not present to the ALJ or the Appeals Council in support of her disability claim. These records are not part of the administrative record for review by this court."). To obtain a sentence six remand, a plaintiff must show: (1) the evidence is new and noncumulative; (2) the evidence is material in that there is a reasonable probability the administrative result would change; and (3) good cause exists for failing to submit the evidence at the administrative level. Milano v. Bowen, 809 F.2d 763, 766 (11th Cir. 1987); see also Ingram, 496 F.3d at 1267-68 (explaining and re-affirming Milano as proper sentence six standard).

First, in making his sentence six argument, Plaintiff concedes the hearing report submitted to the ALJ in support of the 2010 applications was not entitled to any weight because it was not performed by an acceptable medical source. (Doc. no. 13, p. 2); R. 629-31. Indeed, the ALJ recognized the prior test but discounted hearing loss as a basis for disability because the loss did not meet the requisite Listing level, and the testing did not indicate whether Plaintiff's hearing could be restored. R. 27-28. Nevertheless, the ALJ did recognize multiple doctors who examined Plaintiff identified a hearing problem, and the ALJ accounted for that in the RFC by including a restriction that verbal instructions must be given face-to-face in a louder than normal voice and not be given in moderate to noisy environments. R. 21, 22, 24, 27. Thus, as discussed above in relation to re-contacting Dr. Whitley for an Axis II diagnosis, the ALJ was not required to send Plaintiff for another

18

hearing test because he had sufficient information to make an informed decision and include hearing restrictions in the RFC.  See Ingram, 496 F.3d at 1269 (recognizing ALJ not required to seek additional medical information so long as record contains sufficient information to make an informed decision on a claimant's application).

Second, Plaintiff fails to show the 2016 hearing test and award of disability benefits based on a 2016 application is material to the case at hand such that there is a reasonable probability of changing the 2014 administrative decision.  Plaintiff concedes in his reply brief he is not arguing the favorable 2016 disability decision undermines the previous unfavorable decision.  (Doc. no. 15, p. 1.)  Rather, he argues the Court should remand to let the ALJ decide whether the new hearing test would have changed the administrative result.  In other words, Plaintiff contends the materiality decision should be made by the ALJ, not the Court.  That is not the law.

Plaintiff must establish to the Court the materiality of the new evidence.  He has not done so. The new test was performed two years after the ALJ's decision, and at least as to the DIB application, nearly eight years after the expiration of Plaintiff's insured status.  Evidence of Plaintiff's condition after the relevant time period that does not describe a claimant's condition during the relevant time period may be rejected as irrelevant.  Hughes v. Comm'r of Soc. Sec. Admin., 486 F. App'x 11, 14 (11th Cir. 2012); Grantham v. Colvin, CV 312-046, 2013 WL 3804581, at *4 (S.D. Ga. July 18, 2013).

Moreover, as the Commissioner points out, Plaintiff reported during the new testing that his condition was progressive, and the audiologist did not opine a consistency of the severity of hearing loss tested in 2016 as of any particular prior date.  (Doc. no. 14, pp. 2-3 (citing doc. no. 13-2).)  Thus, the Court rejects Plaintiff's implied request for the application

19

of a presumption that his hearing loss in 2014 existed at the same level of severity as was found in 2016. (Doc. no. 13, p. 4 ("The record contains no evidence or inference that the hearing loss only recently occurred.").) To the contrary, a claimant bears the initial burden of establishing (1) the existence of a disability, (2) showing an impairment or combination of impairments that meets or exceeds a Listing, and (3) proving an inability to perform previous work. Lucas v. Sullivan, 918 F.2d 1567, 1571 (11th Cir. 1990).

In sum, Plaintiff has not established the new hearing test is material to the administrative decision under review, and therefore Plaintiff is not entitled to a sentence six remand.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 3rd day of April, 2017, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA